OPINION
{¶ 1} Plaintiffs-appellant Michael and Jennifer Farmer appeal from the December 3, 2002, and September 17, 2003, decisions of the Knox County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellants Michael and Jennifer Farmer are the owners of a house located at 204 Wiggin Street in Gambier, Ohio, a village of approximately six hundred people. Kenyon College is located in Gambier. Appellants' property is located in an "R" residential district which permits only single family dwellings and is currently a duplex. Since the building's use as a duplex predated the zoning code, the use was "grandfathered" in. Each unit of the duplex has two bedrooms. While three people live in one unit of the duplex, one person rents the other unit.
 {¶ 3} In August of 2001, appellants applied for a conditional use permit seeking to turn an extra room in the structure into a sixteen (16) feet by eighteen (18) feet efficiency apartment with a bathroom and an efficiency kitchen. A hearing on appellants' permit was held before the Gambier Planning and Zoning Commission on September 18, 2001. At such hearing, appellant Jennifer Farmer indicated that there were typically four cars parked at the duplex and that, if the efficiency apartment was permitted, there would be at most one other vehicle. Appellant Jennifer Farmer stated that she would consider creating parking in the rear of the property in response to concerns that the occupants of the duplex park their vehicles on a part of the village right-of-way.
 {¶ 4} At the September 18, 2001, hearing, Eric Holdener, a contiguous property owner, voiced concerns over the side door to the proposed efficiency apartment facing his property. Since there was already a window in front of the duplex that faced the street, appellant Jennifer Farmer indicated that moving the door to the proposed efficiency apartment so that it fronted Wiggins Street would be a good idea. Following additional discussion, the Commission members determined that there were questions that needed to be addressed by Ken Lane, the Gambier Village Solicitor, regarding the conditional use application. One of the specific questions was whether the grandfathered use as a duplex was affected by the expansion of a conditional use.
 {¶ 5} Before the next meeting of the Gambier Planning and Zoning Commission on November 20, 2001, appellants submitted a survey in response to the Commission's request. Once again at the hearing, appellant Jennifer Farmer indicated that appellants were willing to move the parking to behind the building and to change the door from the side to the front if the Commission so desired. At the November 20, 2001, hearing, the issue of whether previous grandfathering was affected by an application for a new conditional use of the property was addressed. The Secretary of the Commission stated that, based on the legal opinion received from the Solicitor, he believed that "a conditional use is treated as a new application" and that "[i]t doesn't get the benefit of any previous grandfathering. . . . If it's a change in usage, then it's looked at as a new application and it must meet all the requirements. . . ." Transcript of November 20, 2001, hearing at 11. The issue of side yard setbacks was also addressed at the hearing. The Gambier Village Zoning Code requires a total of twenty feet in side yard setbacks. The property currently owned by appellant does not comply with the setback requirement. While the setback requirements were "grandfathered in as a two-family dwelling", the question was raised whether, since the use of the building was being changed "to a more intensive use and to a multifamily dwelling," the grandfathering continued.
 {¶ 6} At the conclusion of this portion of the November 20, 2001, hearing, Susan Spaid, Chairperson of the Planning and Zoning Commission, stated, in relevant part, as follows:
 {¶ 7} ". . . During this recess we have actually reached a decision here as to what our next step is, and that is that it is unclear what Ken Lane [the Solicitor] has said to us about the stipulations of the side yard requirement and if a conditional use permit could be granted when that side yard is not met.
 {¶ 8} "For that reason, with this — with any application we have within 24 hours to 30 days to respond. What we would like to do is go back to Ken Lane specifically with this question. And if he says that we do not have the authority to accept or grant a conditional use permit when a side yard requirement is not met and that the Council has to give a variance, then we would contact you and tell you that as soon as he tells us so that you would be able to attend the December meeting of the Village Council to request that variance.
 {¶ 9} "If he says that we can make a decision to accept an application even when a side yard requirement is not met, based on the totality of the other information, that we would not need to have a variance granted by Council, then we will notify you of that and we would be willing to hold a special meeting before our next December meeting in order to reach a conclusion.
 {¶ 10} "So, I don't know that we need a motion for that action. That's the way we're going to proceed with it." Transcript of November 20, 2001, hearing at 49-50.
 {¶ 11} The hearing then recommenced on December 10, 2001. On such date, the Zoning Inspector recommended that the Commission be "extremely cautious with dealing conditional use and/or variances" due to the Zoning Ordinances' emphasis on enhancing residential neighborhoods and not causing harm to any surrounding neighborhoods. Transcript of December 10, 2001, hearing at 7, 8. At the hearing, Doug Givens, the owner of a neighboring house, indicated that he was opposed to the application for a conditional use permit because of concerns of increased usage of the structure and because of concerns that a college student might live in the "tiny" apartment. Givens also voiced concerns that "it's that transient part in the residential district, that I have, . . . opposed to it from day one." Id. at 11. However, Givens stated that he was going to be a "happy camper" no matter what the decision was. Transcript of December 10, 2001, hearing at 10, 11.
 {¶ 12} Eric Holdener, the owner of property to the west of the subject property, objected to the increased traffic, the size of the side lot, and to the fact that the door to the efficiency faced his home. Holdener also indicated that he was appalled that the parking might be in the rear of the structure because of the slope of the lot. A letter from Mark Ramser, a Commission member who had recused himself, and his wife was read at such hearing. In such letter, the Ramsers, who are adjoining landowners, indicated that they preferred that the subject property use not be expanded beyond its present use as a duplex and indicated that, if the conditional use application was granted, the screening and landscaping provisions of the Zoning Ordinance be completely followed.
 {¶ 13} In response to the concerns raised at the December 10, 2001, hearing, appellant Jennifer Farmer, who is in the real estate business, noted that she had received calls from faculty members who are coming to Kenyon College to work on a temporary basis and who are in need of short-term housing. Appellant Jennifer Kenyon also noted that the vast majority of properties in the area were either residential or multi-family rentals and pointed out that, while the side yard had been discussed extensively, appellants were not requesting any changes to the outside of the building, which has been in place since 1885. Appellant Jennifer Farmer also took issue with the reference to her property as a non-conforming use, arguing that, under the Zoning Code, a two-family residence in a residential district was a conditional use.
 {¶ 14} At the hearing, Michael Schlemmer, the Commission Secretary, responded as follows when the issue of side yard requirement deficiencies was brought up:
 {¶ 15} "MR. SCHLEMMER: The issue — the issue that was raised at the last meeting was whether that precluded our even granting the conditional use because of language that suggests that a conditional use has to meet all other requirements of the Code.
 {¶ 16} "The opinion that we got back from Ken Lane, as I understand it, says, no, it doesn't preclude that, we are appropriate to consider this conditional use on its own merits without regard as to whether it meets the side yard setbacks.
 {¶ 17} "The other argument that Jenny's making is that she's not changing the side yard setbacks, those are grandfathered in, they are what they are. So the only issue in that regard would be whether the increased usage would make some change in the way we assess that.
 {¶ 18} "And, as I say, Ken's saying it doesn't have to. We make a determination independent of the setback requirements. We specifically continued and held this over to try and get that feedback from Ken, so . . ." Transcript of December 10, 2001, hearing at 35-36. Another Commission member opined that additional cars parked in the neighborhood would not complement the neighborhood and would harm the quality of life. Michael Schlemmer further pointed out that, under zoning ordinances, if the conditional use application were granted and an efficiency apartment was allowed, up to four unrelated individuals could occupy the same, resulting in up to a total of twelve people living in the structure. The following is an excerpt from Schlemmer's statement at the hearing:
 {¶ 19} "MR. SCHLEMMER: Now, because the concern — and you made the point last time, that you could have eight people in there right now, which is exactly right and I don't doubt that its' not your intention to do that and that your intention with this particular additional unit is probably to have one additional person in there.
 {¶ 20} "But what we're approving here would be a change that would make this into three separate dwelling units. A dwelling unit defined as a unit that will contain a family, and a family being defined as up to four unrelated people.
 {¶ 21} "Under the Code as it's written now, if we approve this, in theory, there's nothing in our Code that would prevent not necessarily even you, but some subsequent owner of this property from trying to squeeze 12 people into this property.
 {¶ 22} "It doesn't seem practical to put four people in that one room, but like you, I've seen families, particularly families that are hard put, squeeze into all kinds of places, live in cars and live in places that were not designed for that.
 {¶ 23} "So I think that what we're considering here is increasing the potential occupancy of this property from the eight that it's at right now at least to nine or ten and arguably, under the Code, we couldn't prevent it from going up to 12.
 {¶ 24} "And I think that's the problem that I'm not prepared to agree is a good idea. I think the rest of your arguments are appropriate. I think you're arguing those aspects of the Code that would be supportive of your application.
 {¶ 25} "I think our job is to make a determination on any basis that is not clearly arbitrary as to whether or not we think this is beneficial to the village. I understand why you want to do it and I understand why it is reasonable from your standpoint, and I don't doubt when you say that you're talking about adding one more people and that you're not looking to make as many people as might be permitted be in there." Transcript of December 10, 2001, hearing at 41-42.
 {¶ 26} At the conclusion of the December 10, 2001, hearing, three out of four members of the Commission voted to deny the application for a conditional use permit because the increased density in use of the subject property would not be in the best interest of the Village of Gambier. Michael Schlemmer, in voting in favor of denying the application, noted that "if we approve this, we are approving occupancy in this particular building of up to at least 9 and possibly as many as 12 people, although that's not what's in there, we'd have no way of preventing that." Transcript of December 10, 2001, hearing at 51.
 {¶ 27} Appellants appealed the decision of the Gambier Zoning and Planning Commission to the Gambier Board of Zoning Appeals. The Board of Zoning Appeals held a hearing on February 13, 2002,[1] and, at a subsequent meeting held on February 19, 2002, voted unanimously to deny appellants' request for a conditional use permit. The Board of Zoning Appeals adopted a proposed motion stating as follows:
 {¶ 28} "Findings. It is the function of the Planning Commission to use informed and reasonable judgement in determining whether proposed changes are in conformity with both the general purpose of the Zoning Ordinances as well as its specific provision. We find, after a careful review of the testimony presented in the Planning Commission Hearing and recorded in its minutes, a visit to the site, and due consideration of the statements of the neighbors who will be directly affected by the proposed change, that the decision of the Planning commission [sic] is a reasonable and appropriate application of the zoning ordinances, in particular Section 5.9 C and D.[2] It is clear that the intent of the proposed change is to enhance the profitability of rental property. It is not capricious, arbitrary, or unreasonable to find that the proposed change in the design and use of this structure will not bring this nonconforming rental property into closer conformity with the patterns of design and use of the residences in its immediate neighborhood."
 {¶ 29} Appellants then appealed to the Knox County Court of Common Pleas. After the mater was briefed by the parties, the trial court, pursuant to a decision filed on December 3, 2003, affirmed the decision of the Board of Zoning Appeals.
 {¶ 30} Appellants then filed a Notice of Appeal with this Court. As memorialized in an Opinion filed on May 23, 2003, inFarmer v. Village of Gambier, Knox Case No. 03CA00001, 2003-Ohio-2705, this Court stated, in relevant part, as follows: "[t]he trial court did not address the issue of the constitutionality of the zoning regulations in its judgment entry of December 3, 2002. Before we review the trial court's decision, the trial court must complete its task and determine whether the Zoning Ordinances of the Village of Gambier are constitutional." For such reason, we vacated the trial court's judgment and remanded the matter to the trial court for further proceedings.
 {¶ 31} Upon remand, both parties filed additional briefs with the trial court. Pursuant to a decision filed on September 17, 2003, the trial court held that the decision of the Board of Zoning Appeals was "constitutional and legal" and was "not arbitrary, capricious, unreasonable or unsupported by the preponderance of the evidence in the record."
 {¶ 32} Appellants now appeal from the trial court's September 17, 2003, decision, raising the following assignments of error:
 {¶ 33} "I. The appellees' decisions as affirmed by the common pleas court were unconstitutional, illegal, arbitrary, capricious, unreasonable and contrary to law.
 {¶ 34} "II. The Common Pleas Court erred in finding that appellees' decisions denying appellants' conditional permit was supported by substantial, reliable and probative evidence on the whole record."
 Standard of Review {¶ 35} R.C. 2506.04 states as follows:
 {¶ 36} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."
 {¶ 37} The Ohio Supreme Court construed the above language in the case of Henley v. Bd. of Zoning Appeals, 90 Ohio St.3d 142,147, 2000-Ohio-493, 735 N.E.2d 433. The Court stated as follows:
 {¶ 38} "[W]e have distinguished the standard of review to be applied by common pleas courts and courts of appeal in R.C. Chapter 2506 administrative appeals. The common pleas court considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See Smith v.Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608, 612,693 N.E.2d 219, * * * citing Dudukovich v. Lorain Metro. Hous.Auth. (1979), 58 Ohio St.2d 202, 206-207, 389 N.E.2d 1113.
 {¶ 39} However, our standard of review to be applied in a R.C. 2506.04 appeal is more limited in scope. Kisil v. Sandusky
(1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848. An appeal to the court of appeals, pursuant to R.C. 2506.04, "requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." Id. at 34. Revised Code 2506.04 "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City School Dist. Bd. of Edn. v.State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 261,533 N.E.2d 264.
 {¶ 40} It is based upon this standard that we review appellants' assignments of error.
 I, II {¶ 41} Appellants, in their two assignments of error, argue that the trial court erred in affirming the decision of the Board of Zoning Appeals since such decision was unconstitutional, illegal, arbitrary, capricious, unreasonable and was not unsupported by the preponderance of substantial, reliable, and probative evidence. We disagree.
 {¶ 42} As an initial matter, we note that appellants, in the case sub judice, argue, in part, that the zoning regulations relating to conditional uses are unconstitutional on their face since they are unreasonably vague and thus provide no guidance to the Zoning Commission and its Board members. However, the constitutionality of the ordinance on its face is not a proper subject for an R.C. 2506 administrative appeal. Rather, the proper vehicle for challenging the constitutionality of an ordinance on its face is through a declaratory judgment action.Grossman v. Cleveland Heights (1997), 120 Ohio App.3d 435,698 N.E.2d 76;[3] T.T.R. Media v. Bratenahl, Cuyahoga App. No. 79308, 2002-Ohio-17.
 {¶ 43} Appellants further contend that the decision of the Board of Zoning Appeals was arbitrary, capricious, unreasonable and not supported by a preponderance of substantial, reliable and probative evidence.
 {¶ 44} In the case sub judice, appellants' duplex is located in a Residential District "R". While duplexes are not permitted uses in a Residential District, two-family dwellings are conditional uses in a Residential District. Since the building did not comply with required side yard setback requirements, it did not comply with the standards for a conditional use in a Residential District and, therefore, was a nonconforming use that was grandfathered in since it existed prior to the zoning code. In short, as appellees note in their brief, "even though the new zoning code states that duplexes are a conditional use in the residential district, if that duplex does not meet the standards placed on the conditional use, it is not a condition [sic] use under the new code, but continues as a non-conforming use."
 {¶ 45} Non-conforming uses are not favorites of the law.Kettering v. Lamar Outdoor Advertising, Inc. (1987),38 Ohio App.3d 16, 18, 525 N.E.2d 836. Local governments may prohibit the expansion or substantial alteration of a non-conforming use in an attempt to eradicate that use, and they may regulate nonconforming uses to the point that they "wither and die." Beckv. Springfield Twp. Bd. of Zoning Appeals (1993),88 Ohio App.3d 443, 446, 624 N.E.2d 286.
 {¶ 46} As is stated above, appellants sought to convert their duplex, which was a non-conforming use, by adding a third apartment. Chapter 11 of the Village of Gambier Ohio Zoning Code, which is captioned "NONCONFORMING USES, SIGNS, OR BUILDINGS", states, in pertinent part, as follows:
 {¶ 47} "11.1 Nonconforming uses or building — enlargement,substitution etc. No existing building or premises devoted to a use not permitted by this ordinance in the district in which such building or premises is located, shall be enlarged, extended, or reconstructed unless the use thereof is changed to a use permitted in the district in which such building or premises is located, and except as follows:
 {¶ 48} "A. Nonconforming use made to conform. Whenever a nonconforming use has been changed to a conforming use, such use shall not thereafter be changed to a nonconforming use.
 {¶ 49} "B. Unsafe buildings. When the safety to the occupants of said structure or structures is in danger, and then repair shall be limited to the correction only of existing threats."
 {¶ 50} To meet the requirements for a conditional use, appellants were required to meet certain requirements, including yard setback requirements. Section 5.6B. of the Zoning Code states, in relevant part, as follows: "Side: shall be a minimum total (on both sides of the building) of 20 feet with not less than 5 feet of side yard on each side of the building. . . . . ."
 {¶ 51} There is no dispute that the duplex did not meet the side setback requirements. Since the duplex, therefore, did not meet the standards for becoming a recognized conditional use in the Residential District, it remained a non-conforming use. As is stated above, pursuant to section 11.1 of the Village of Gambier Zoning Code states, in relevant part, as follows: "Nonconforming uses or building. . . . [n]o existing building or premises devoted to a use not permitted by this ordinance in the district in which such building or premises is located, shall be enlarged, extended or reconstructed. . . ." Appellants' attempt to add an efficiency apartment to their duplex constituted an attempt to reconstruct the premises.
 {¶ 52} Furthermore, we find that the trial court did not err in affirming the decision of the Board of Zoning Appeals for another reason. The Village of Gambier Zoning Code states, in relevant part in section 5.9, as follows:
 {¶ 53} "Application to Planning Commission. Development plans of all proposed permitted and/or conditional uses in the Residential district shall be submitted along with maps, surveys, landscaping plans, and other required information to the Planning Commission as an application for a zoning certificate for review, report, and action thereon. General criteria for reviewing a development plan for such a proposal shall be:
 {¶ 54} "C. The location, design, and occupancy of such a building or use will complement or enhance the surrounding residential neighborhoods and the Village's architectural design and character; and
 {¶ 55} "D. The location, design, and occupancy of such a building or use will not cause harm of any sort to the surrounding residential neighborhoods or the Village's architectural design and character."
 {¶ 56} As is set forth in detail in the statement of facts, testimony was adduced at the hearings in this matter that the increased occupancy of such building would not "complement or enhance the surrounding residential neighborhoods and the village's architectural design and character." Testimony was adduced that, if appellant's duplex was changed by the addition of an apartment, there would be an increase in parking at the subject property, increased traffic in and out of the building and the necessity of constructing a parking area.
 {¶ 57} Based on the foregoing, we find the trial court's decision affirming the decision of the Board of Zoning Appeals was not illegal, arbitrary, capricious or unreasonable and was based on substantial, reliable and probative evidence. Appellants' two assignments of error are overruled.
 {¶ 58} Accordingly, the judgment of the Knox County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J. and Boggins, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] While the parties cite to the transcript of the February 13, 2002, hearing, there is no record that the same was filed with the trial court or this court.
[2] Such sections are cited in Paragraph 53-55 of this Opinion.
[3] In Grossman, the appellant argued that a zoning ordinance was unconstitutional since it was based on aesthetic consideration and since it violated the void for vagueness doctrine. The court held that since the appellant was challenging the constitutionally of the ordinance on its face, the appeal brought pursuant to R.C. Chapter 2506 had to be dismissed.